Angelo **DISPENSA**, Individually and as Independent Executor of The Estate of Frances D. Maceo, Deceased, Appellant,

v.

**UNIVERSITY STATE BANK, Appellee.**

No. 14–97–00380–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 25, 1999.

---

Timothy R. Ploch, Houston, Keith C. Livesay, Pharr, for appellants.

Leslie L. Gallman, Sugar Land, for appellees.

Panel consists of Justices MAURICE E.AMIDEI, FOWLER, and Senior Justice DRAUGHN.*

## MAJORITY OPINION

WANDA McKEE FOWLER, Justice.

In an attempt to have a six year old default judgment set aside, appellant, Angelo Dispensa filed a bill of review and a suit collaterally attacking the judgment. He claimed that he was not served with the underlying law suit University State Bank filed against him. He claims that this lack of service prevented the court from obtaining personal jurisdiction over him, and made the trial court's judgment void. He also claims that the trial court erred (1) in granting a summary judgment on his collateral attack and in not allowing him to introduce evidence extrinsic to the judgment and (2) in dismissing his bill of review. We conclude that the judgment was not void, but merely voidable because Dispensa received notice of the judgment shortly after it was entered. We also conclude that (1) Dispensa, having received notice of the default judgment shortly after it was entered, lost his right to attack the judgment by a bill of review when he failed to timely use the remedies contained in the Texas Rules of Civil Procedure for setting aside default judgments and (2) Dispensa could not rely on extrinsic evidence to collaterally attack the valid service recitals in the judgment.

* Senior Justice Joe Draughn sitting by assignment.

## FACTUAL AND PROCEDURAL BACKGROUND

Dispensa was a Texas resident when he executed a promissory note to the Bank in 1987 for $281,009.16. He moved to Connecticut in 1989 and shortly thereafter defaulted on the note. The Bank sued on the note in 1990. In its first amended original petition, the Bank alleged Dispensa was a nonresident engaging in business in Texas without a place of business or agent for service of process, and based on this, served the Secretary of State of Texas as Dispensa's agent for service of process. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.045 (Vernon 1997). The Bank's petition alleged that Dispensa lived at 109 Long Hill Drive, East Hartford, Connecticut 06108.

The Secretary of State forwarded the citation and petition to this address. The certificate of the Secretary of the State, dated September 14, 1990, stated the citations and petitions were "forwarded on AUGUST 21, 1990 by CERTIFIED MAIL, return receipt requested, to" Dispensa at 109 Long Hill Drive, East Hartford, CT 06108. The certificate further stated "[t]he PROCESS was returned to this office on SEPTEMBER 13, 1990, bearing the notation UNCLAIMED."

Apparently, when the Bank sent the citation and petition to the Secretary of State the address was correct, but, by the time the Secretary of State sent the citation to Dispensa, he had moved. The Bank had his new address in its files but did not try to correct the service by serving Dispensa at the new address.

Based on Dispensa's failure to answer the suit, the Bank moved for entry of a default judgment. On December 26, 1990, the trial court entered a default judgment against Dispensa. The default judgment recited that Dispensa was duly served with citation according to law but failed to appear and wholly defaulted. Although the record is unclear as to exactly what type of notice Dispensa received, Dispensa received notice of the entry of the default judgment only days after it was entered. He contacted a lawyer to take care of the problem but never followed up on it.

Six years later, when the Bank instituted foreclosure proceedings against the property, Dispensa began his first real attempts to have the judgment set aside. On September 6, 1996, he filed his original petition alleging that the suit was brought as a collateral attack on the default judgment and claiming that the judgment was void because he was never served with process. The Bank filed a motion for summary judgment alleging that Dispensa's collateral attack must fail because the judgment was voidable, not void, and was not subject to a collateral attack. The Bank contended that the judgment's recital of valid service was conclusive and that extrinsic evidence could not be used to establish lack of jurisdiction. The trial court agreed and ordered Dispensa to file an amended petition asking for a bill of review. Dispensa complied, filing a second amended original petition collaterally attacking the default judgment as void and, in the alternative, asking for a bill of review.[1] The trial court granted a partial summary judgment to the Bank, dismissed Dispensa's collateral attack, and ordered a hearing on the bill of review. After the hearing on the bill of review, the trial court entered an order denying the bill of review on the grounds that it was barred by the four-year statute of limitations and that Dispensa had not exhausted all of his legal remedies before filing the bill of review. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.051 (Vernon 1997) (discussing the four-year residual limitations period).

In response to Dispensa's request, the trial court entered findings of fact and conclusions of law. The trial court's findings of fact stated that "[b]y the time service was made on the secretary of state, Dispensa had moved from 109 Long Hill Drive," the secretary of state forwarded process to the address given by the Bank, and the process was returned marked "unclaimed." The Court also found that Dispensa learned of the December 26, 1990, default judgment "as early as January 1991, and probably on or before December 31, 1990." In addition, the court found that Dispensa "learned of the

---

1. A bill of review is considered a direct attack on a default judgment.

default judgment in time to file a motion for new trial, probably under Rule 329b(a), but if not in time for the 30–day limit of Rule 329b(a), then at least in time to file a motion for new trial with the additional time allowed by Rule 306a(4)." Finally, the court found that Dispensa "learned of the default judgment, probably in time to file an appeal but at least within the six months allowed to file a writ of error." [2]

The trial court's conclusions of law found that Dispensa was not properly served with citation in the underlying case but concluded that the four-year statute of limitations barred Dispensa's bill of review because he knew about the default judgment "almost four years before the statute of limitations ran." The trial court further concluded that Dispensa would not be entitled to a bill of review because he did not exhaust his legal remedies of a motion for new trial, appeal, or writ of error, and he knew about the judgment in time to file a motion for new trial.

As we have said earlier, Dispensa has two main complaints on appeal. First, he complains that the court erred when it granted summary judgment and dismissed his collateral attack. Second, he complains that the trial court wrongly concluded that his bill of review claim was barred by the statute of limitations and barred because he did not exhaust other remedies such as a motion for new trial, appeal, or writ of error to set aside the judgment. We will address the bill of review first.

**The Bill of Review**

The ultimate question is whether Dispensa had to meet the bill of review requirement that he exercise due diligence in setting aside the judgment. *See Rizk v. Mayad,* 603 S.W.2d 773, 776 (Tex.1980). He claims that upon a showing of "improper service," a party filing a bill of review is absolutely entitled to have a judgment set aside. *See Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 84, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988). He also claims that defective service makes a

judgment void. *See id.* For several reason, we disagree with both of these contentions.

**A. Due Process**

The validity of a personal judgment against an out of state person depends on the state meeting the due process requirements of the Fourteenth Amendment. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Due process has two aspects to it: 1) the defendant must be given adequate notice of the suit and 2) the defendant and the state must have a certain amount of minimum contacts to subject the defendant to the personal jurisdiction of the court. *See id.* Here, Dispensa does not contend, and could not contend, that sufficient minimum .contacts did not exist between him and Texas. The only question is whether adequate notice was given.

**1. Adequate Notice**

Almost fifty years ago the Supreme Court explained what kind of notice will satisfy due process concerns and constitute adequate notice. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance.

But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied.

... [W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing

---

**2.** When this judgment was entered, the proceeding by which a party made a direct attack on a judgment after the trial court had lost plenary power but before six months had passed was called a writ of error. Currently, the proceeding is called a restricted appeal. *See* Tex.R.App. P. 30.

the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected...."

*Id.* (citations omitted).

The issue of procedural due process was revisited in a 1965 Supreme Court opinion, where the court focused on the right to be heard. *See Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). "A fundamental requirement of due process is the 'opportunity to be heard.' It is an opportunity which must be granted at a meaningful time and in a meaningful manner." *See id.* (citation omitted).

### 2. The Importance of Peralta

■ More recently, in *Peralta,* the Supreme Court again had an opportunity to address the due process rights of a litigant. *See Peralta,* 485 U.S. at 80, 108 S.Ct. at 896. *Peralta* is important to this case for one main reason. *Peralta* clarified when Texas's procedural requirements for setting aside a default judgment violate the due process clause of the Fourteenth Amendment and thereby make a judgment void. This happens when a party has not received notice of the suit and the judgment.

*Peralta* received no actual or constructive notice of the suit or the judgment against him. *See id.,* 485 U.S. at 81–84, 108 S.Ct. at 897–98. He found out about the judgment two years after it had been entered, and after his property was sold at a great discount. *See id.* 108 S.Ct at 897. When Peralta ultimately received notice of the suit and judgment, the only remedy available to him was to set aside the judgment was a bill of review. *See id.* 108 S.Ct. at 898. He argued that the bill of review procedure was not an adequate remedy for one who had received no notice of the underlying suit. *See id.* He pointed out that under a bill of review, he

would have to show that he had a meritorious defense. *See id.* But, he did not have a meritorious defense. *See id.* He argued that if he had received timely notice of the suit, he could have taken several steps to avoid the full brunt of the suit, such as impleading the employee whose debt he had guaranteed, working out a settlement, paying the debt, or selling the property himself to get more money than could be obtained at a constable's sale. *See id.* 108 S.Ct. at 899. The lack of notice harmed him by preventing him from taking these steps to protect himself.

The court agreed that under the circumstances, Peralta's due process rights were violated. *See id.* 108 S.Ct. at 900. It relied on the fact that the default judgment was entered without notice and had substantial adverse consequences on Peralta. *See id.* 108 S.Ct. at 899–900. Thus, *Peralta* was important to Texas procedural law because it made it clear that one receiving no actual or constructive notice of a judgment is entitled to have it set aside without proving a meritorious defense. *See Lopez v. Lopez,* 757 S.W.2d 721, 723 (Tex.1988).

### 3. This Case is Different From Peralta

■ Although *Peralta* is an important due process case for Texas procedure, its actual impact is more limited than Dispensa contends. As one law review article has noted,

Cases are infrequent in which there is no service at all as opposed to defective service.... Even if the defendant receives no notice initially, it is likely he will receive either formal or actual notice [3] of the judgment against him during a period in which relief is guaranteed without an allegation of a meritorious defense.

*See* William R. Trail & Julia A. Beck, *Peralta v. Heights Medical Center, Inc.: A Void Judgment Is a Void Judgment Is a Void Judgment—Bill of Review and Procedural*

---

**3.** The authors of this article note that they use "formal notice" to describe the notice provided by the Texas Rules of Civil Procedure and "actual notice" to describe the situation where the defendant becomes aware of the proceedings against him without the intervention of the official notice under the Texas Rules of Civil Proce-

dure. *See* William R. Trail & Julia A. Beck, *Peralta v. Heights Medical Center, Inc.: A Void Judgment Is a Void Judgment Is a Void Judgment—Bill of Review and Procedural Due Process in Texas,* 40 Baylor L.Rev. 367, 379 nn.73–74 (1988).

*Due Process in Texas,* 40 BAYLOR L.REV. 367, 378–79 (1988). That is the case here.

Even though Dispensa was not served, he did receive notice of the judgment. Although the record is unclear whether Dispensa received rule 239a notice of the judgment, clearly, he received notice shortly after the entry of the judgment. The court found that Dispensa probably learned of the judgment within five days of its entry; but that in any event, he knew of it within thirty to thirty-five days. Thus, at the very least, Dispensa had actual notice of the judgment and may have had formal notice pursuant to the rules of civil procedure. Furthermore, he had notice at a time when he could have had the judgment set aside simply by showing that he was not served with citation. *See* TEX.R. CIV. P. 306a(4); TEX.R. CIV. P. 329b; TEX. R.APP. P. 30.

This notice does not violate *Peralta* and therefore does not violate the due process clause of the Fourteenth Amendment because Dispensa received "notice at a meaningful time and in a meaningful manner that would have given him an opportunity to be heard." *See Peralta,* 485 U.S. at 86, 108 S.Ct. at 899. Indeed, Dispensa testified that when he received notice of the judgment, he contacted a lawyer "to take care of it," but he never took the steps to ensure that the lawyer would get the judgment set aside. Thus, Dispensa's current predicament is not a direct result of lack of notice of the suit but a result of his own inaction. This means the judgment is not void.

Because Dispensa's own inaction—rather than lack of notice—caused him to miss the opportunities for filing a motion for new trial and a restricted appeal, the trial court correctly made the dual conclusions that the judgment was not constitutionally void and that Dispensa had to meet the requirements of a bill of review. *See, e.g., Transworld Fin. Servs. Corp. v. Briscoe,* 722 S.W.2d 407, 408 (Tex.1987) (discussing that a bill of review petitioner must show a good excuse for failure to exhaust adequate legal remedies); *see also Alexander v. Hagedorn,* 148 Tex. 565,

226 S.W.2d 996, 998 (Tex.1950) (discussing the requirements for a litigant to be entitled to a bill of review the litigant must show a good excuse for failure to exhaust adequate legal remedies.) Furthermore, because Dispensa received notice at a meaningful time and in a meaningful manner, the application of the four year statute of limitations was not unconstitutional. *See Peralta* 485 U.S. at 86, 108 S.Ct. at 899. Finally, since Dispensa learned of the judgment no later than January of 1991, and did not file this suit until September of 1996, the trial court also correctly concluded that he could no longer bring a bill of review because the statute of limitations had run. *See Brown v. Ramsey,* 472 S.W.2d 322, 324 (Tex.Civ.App.—El Paso 1971, writ ref'd n.r.e.) (holding that statute of limitations will bar bill of review four years after one learns, or by exercise of due diligence, would have learned, of the judgment.) Dispensa had a timely opportunity to legally challenge the judgment against him. He failed to do so until five years and eight months had passed. We overrule points of error four, five, six, and seven.

## THE COLLATERAL ATTACK

■ Dispensa's second argument against the judgment presents an equally interesting issue. In points of error two through four, Dispensa complains because the trial court held that (1) he could not introduce extrinsic evidence to collaterally attack the default judgment, (2) the default judgment should not be set aside by a collateral attack, and (3) Dispensa was required to pursue a bill of review instead of a collateral attack.

We look first at whether Dispensa could collaterally attack the judgment.[4] The case law is confusing and, arguably, inconsistent on this issue. For example, Dispensa cites us to cases holding that a court does not gain jurisdiction over a party when the service was defective, that any judgment entered in such a case is void, and that the judgment can be attacked at any time. *See American Universal Ins. Co. v. D.B. & B., Inc.,* 725

---

**4.** "A collateral attack is an attempt to avoid the effect of a judgment in a proceeding brought for some other purpose." Gus M. Hodges, *Collater-* *al Attacks on Judgments,* 41 TEX. L.REV. 163, 163 (1962).

S.W.2d 764, 766 (Tex.App.—Corpus Christi, 1987, writ ref'd n.r.e.).

> If a court has not acquired jurisdiction of *both* the parties and the subject matter of the litigation, the judgment is void and subject to both direct and collateral attack. "[A] void judgment is one entirely null within itself, and which is not susceptible of ratification or confirmation, and its nullity cannot be waived."

*Id.* (alteration in original) (citations omitted). However, the Supreme Court cases and most court of appeal cases indicate that this rule cannot be taken as literally as Dispensa argues it should be. And, in fact, the Texas Rules of Civil Procedure and Texas case law limit the ability of one to attack a judgment alleged to be void for defective service. *See* TEX.R. CIV. P. 329b(f) (stating that after the trial court has lost plenary power, the only way to attack a judgment is by a bill of review); *Akers v. Simpson*, 445 S.W.2d 957, 959 (Tex.1969); *McEwen v. Harrison*, 162 Tex. 125, 345 S.W.2d 706, 707–711 (1961).[5]

As long ago as 1935, the Supreme Court noted limitations on what a court could look to when a judgment was attacked collaterally.

> It has long been the rule of law in this state, in fact it is the general rule, that a judgment rendered in a civil case against a defendant without some character of appearance by him, or citation having been issued and served on him, is a nullity. In spite of the rule just mentioned, it is the well settled law of this state that where a judgment is collaterally attacked, plain jurisdiction recitals contained therein must be accorded absolute verity.

*Pure Oil Co. v. Reece*, 124 Tex. 476, 78 S.W.2d 932, 934 (1935) (citations omitted).

Later, in 1969, the court was even more clear that, when defective service is alleged, a court cannot go behind the judgment. "It is the firmly established rule in Texas that a defendant who is not served and who does not appear may not, as a matter of public policy, attack the verity of a judgment in a collateral proceeding; the jurisdictional recitals import absolute verity." *Akers*, 445 S.W.2d at 959. This rule has been followed more recently in two Texas Courts of Appeals cases. *See Solomon, Lambert, Roth & Assocs., Inc. v. Kidd*, 904 S.W.2d 896, 901 (Tex.App.—Houston [1st Dist.] 1995, no writ); *Huffstutlar v. Koons*, 789 S.W.2d 707, 710 (Tex.App.—Dallas 1990, no writ).

Citing us to several collateral attack cases, Dispensa has argued that courts have been willing to look behind the recitals in a judgment. *See Mueller v. Banks*, 332 S.W.2d 783, 785–86 (Tex.Civ.App.—San Antonio 1960, no writ). But these cases are not controlling, for these are cases in which the party alleged that the court lacked subject matter jurisdiction or potential jurisdiction, which all authorities agree result in a truly void judgment. *See id.* at 784 (stating that the plaintiff failed to allege a value for partnership property and thereby failed to invoke the court's jurisdiction.); *see also Hicks v. Sias*, 102 S.W.2d 460, 464 (Tex.Civ.App.—Beaumont 1937, writ ref'd) (stating that the court did not have potential jurisdiction over the defendant and so the defendant could attack the judgment with collateral evidence).

Dispensa has also argued that a court can look to extrinsic evidence when a non-resident has attacked a judgment for defective service. In support of this, he cites us to several cases and to McDonald's Texas Civil Practice. *See O'Boyle v. Bevil*, 259 F.2d 506, 513 (5th Cir.1958); *Hicks*, 102 S.W.2d at 464; *Lutcher v. Allen*, 43 Tex.Civ.App. 102,

---

5. When *McEwen* was issued in 1961, rule 329b read in relevant part as follows: " '*After the expiration of thirty (30) days from the date the judgment is rendered or motion for new trial overruled, the judgment cannot be set aside except by bill of review for sufficient cause,* filed within the time allowed by law.' " *McEwen*, 345 S.W.2d at 708. The rule reads substantially the same today. The *McEwen* court construed this language to mean that when the time for filing a motion for new trial has expired and relief may not be obtained by appeal, a proceeding in the nature of a bill of review is the exclusive method of vacating a default judgment rendered in a case in which the court had jurisdictional power to render it. *Into this category will fall those cases in which a default judgment is asserted to be void for want of service, or of valid service, of process.*

*Id.* at 710 (emphasis added).

95 S.W. 572, 575 (Tex.Civ.App.—San Antonio 1906, writ refused); 5 McDonald's Texas Civil Practice § 29:27 (rev.1992). However, in each of these cited cases, the court did not have *potential* jurisdiction over the defendant. In *O'Boyle*, the judgment was entered one week before answer day. *See O'Boyle*, 259 F.2d at 512. In *Hicks* and *Lutcher*, the defaulting defendants were non-residents of the state before Texas enacted its long arm statute and were served out of state. *See Hicks*, 102 S.W.2d at 464; *Lutcher*, 95 S.W. at 574–75. Before the long arm statute was enacted, the only way Texas or any other state could obtain jurisdiction over a non-resident was by serving the non-resident within the state's geographical boundaries. *See Shaffer v. Heitner*, 433 U.S. 186, 197, 97 S.Ct. 2569, 2576, 53 L.Ed.2d 683 (1977); *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Thus, the courts in *Hicks* and *Lutcher* had no potential jurisdiction over defendants served outside the state. Finally, McDonald's Texas Civil Practice plainly states that the rule allowing a nonresident to go behind the judgment recitals is limited to when the court does not have *potential* jurisdiction over the defendant. *See* 5 McDonald's Texas Civil Practice § 29:27 (rev. 1992).

Here, the court had potential jurisdiction over Dispensa. Our rules of procedure governing service of process and our long arm statute—each of which protect the due process rights of individuals—enabled the court to have potential jurisdiction over him. Thus, because the court had potential jurisdiction over Dispensa, he is subject to the general rule regarding collateral attacks on judgment. As stated earlier, under that rule, a defendant alleging defective service may not rely on extrinsic evidence to attack the judgment and may not collaterally attack the judgment.[6]

We overrule points of error one, two, three, and four and affirm the judgment of the trial court.

MAURICE E. AMIDEI, Justice, dissenting.

MAURICE E. AMIDEI, Justice, dissenting.

I respectfully dissent.

Because Mr. Dispensa received a rule 239a notice of default judgment entered against him within five days of entry of the judgment, the majority concludes he had actual notice of the judgment at a time when he could have had the judgment set aside simply by showing that he was not served with citation. While this is no doubt true, a default judgment entered with *no* notice of the *pendency of the action* renders the default judgment constitutionally invalid. *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988); *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 1190, 14 L.Ed.2d 62 (1965). *Armstrong* involved a default judgment entered against the biological father in an adoption proceeding in Texas. *Id.*, 85 S.Ct. at 1189. Armstrong, the natural father, learned of the judgment shortly after the entry of judgment and filed a motion for new trial in the trial court asking that the judgment be set aside and a new trial be granted upon the ground that he had been given no notice of the adoption proceeding. *Id.* 85 S.Ct. at 1189–90. On the hearing of Armstrong's motion for new trial, the trial court heard evidence by Armstrong that he had not failed to contribute to his daughter's support. *Id.* 85 S.Ct. at 1190. The trial court denied Armstrong's motion and confirmed the adoption decree. *Id.* Armstrong appealed to the Texas court of civil appeals on the grounds that the trial court had erred in not setting aside the adoption decree because the entry of the decree without notice to him had deprived him "of his child without due process of law." *Id.* The court of civil appeals affirmed the judgment of the trial court and the Texas Supreme Court refused an application for writ of error. *Id.* The United States Supreme Court stated: "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finali-

---

[6]. Although we have been cited to no cases on the issue, the general rule as outlined in *Akers* could not apply if a defendant did not receive *any* notice of the suit or judgment (i.e. if the service violated the due process clause of the Fourteenth Amendment as in *Peralta*.). Such an application would violate the due process clause of the Fourteenth Amendment.

ty is notice reasonably calculated, under all the circumstances, to apprise interested parties of the *pendency of the action* and afford them an opportunity to present their objections." *Id.* 85 S.Ct. at 1190. The Supreme Court further disagreed with holding of the Texas Court of Civil Appeals that whatever constitutional infirmity resulted from the failure to give the petitioner notice had been cured by the hearing subsequently afforded to him upon his motion to set aside the decree. *Id.* 85 S.Ct. at 1191 [referring to *In re Adoption of Armstrong*, 371 S.W.2d 407, 412 (Tex.Civ.App.-El Paso 1963, writ ref'd n.r.e.) ]. Upon remand to the El Paso Court of Civil Appeals, the El Paso Court adopted the entire opinion of the Supreme Court as the opinion of the El Paso Court of Civil Appeals. *In re Armstrong's Adoption*, 394 S.W.2d 552 (Tex.Civ.App.-El Paso1965, no writ). The pertinent portion of the holding applicable to this case was:

> A fundamental requirement of due process is "the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363. It is an opportunity which must be granted at a meaningful time and in a meaningful manner. The trial court could have fully accorded this right to the petitioner only by granting his motion to set aside the decree and consider the case anew. Only that would have wiped the slate clean. Only that would have restored the petitioner to the position he would have occupied had due process of law been accorded to him in the first place. His motion should have been granted.

*Armstrong*, 85 S.Ct. at 1191; *In re Armstrong's Adoption*, 394 S.W.2d at 556.

In *Peralta* the United States Supreme Court held that Peralta was entitled to have a default judgment set aside in a Texas bill of review case on the grounds that he did not receive proper service of process, even though he did not have a meritorious defense. *Peralta*, 108 S.Ct. at 900. It was not denied by the Medical Center that a judgment entered without notice or service is constitutionally infirm. *Id.* at 899. However, the Texas courts held that to have the judgment set aside, Peralta was required to show that he had a meritorious defense, ap-

parently on the ground that without a defense, the same judgment would again be entered on retrial and hence appellant had suffered no harm from the judgment entered without notice. *Id.* The United States Supreme Court found this reasoning untenable because, had Peralta had notice of the suit, he might have impleaded the employee whose debt had been guaranteed, worked out a settlement, or paid the debt. *Id.* The Court concluded: "Where a person has been deprived of property in a manner contrary to the most basic tenets of due process, 'it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits.'" *Id.* at 900. Citing *Armstrong*, 85 S.Ct. at 1191, the Court stated only "wiping the slate clean ... would have restored the petitioner to the position he would have occupied had due process of law been accorded to him in the first place.'" *Id.* at 900.

In this case, the majority argues that because Dispensa admitted receiving the notice of default judgment within five days of the entry of the judgment, he could have attacked the judgment by motion for new trial, or at least by writ of error within six months. Instead, Dispensa waited until after the statute of limitations had run for filing a bill of review (four years), and then filed a collateral attack on the judgment on the theory that the initial judgment was void for want of personal service. The majority contends that by receiving the default judgment notice, *Peralta* and due process are not violated because Dispensa received "notice at a meaningful time and in a meaningful manner that would have given him an opportunity to be heard." To satisfy due process, the "notice" must be of the *"pendency of the action and afford them the opportunity to present their objections." Peralta*, 108 S.Ct. at 899. Notice *after* the action, triggering post-judgment remedies, does not afford due process. A default judgment is improper against a defendant who has not been served in strict compliance with the law, even if he has actual knowledge of the lawsuit. *Wilson v. Dunn*, 800 S.W.2d 833, 837 (Tex.1990). Dunn's knowledge that Wilson had sued him and his actual receipt of suit papers was not suffi-

cient to invoke the district court's jurisdiction to render default judgment against him. *Id.* Absent service, waiver, or citation, mere knowledge of a pending suit does not place any duty on a defendant to act. *Id.*

Because the judgment in this case was void, it can be collaterally attacked. The record in this case clearly reflects Dispensa was denied constitutional due process because he did not receive notice of the *pending action.* *Peralta,* 108 S.Ct. at 899; *LBL Oil Co. v. International Power Services, Inc.,* 777 S.W.2d 390, 390–91 (Tex.1989). The certificate of the Secretary of State stated the process mailed to Dispensa was returned "unclaimed." The Texas Supreme Court has held that proof that the Secretary of State Forwarded a copy of the process is essential to establish the jurisdiction of the trial court over the person of the defendant. *Whitney v. L & L Realty Corp.,* 500 S.W.2d 94, 96 (Tex.1973). *See also: Royal Surplus Lines Insurance Co. v. Samaria Baptist Church,* 840 S.W.2d 382, 383 (Tex.1992)(default judgment invalid where Secretary of State forwarded citation and petition to wrong address, and letter was returned "unclaimed"); *World Distributors, Inc. v. Knox,* 968 S.W.2d 474, 480 (Tex.App.-El Paso 1998, no writ)(because defendant was not validly served with non-resident service of citation, the trial court failed to obtain in personam jurisdiction over it and the default judgment was void); *Whiskeman v.Lama,* 847 S.W.2d 327 (Tex.App.-El Paso 1993, no writ) (plaintiff made no showing that defendant's address was "home or home office" as required by long arm statute, and trial court never obtained personal jurisdiction over defendant); *Barnes v. Frost Nat. Bank,* 840 S.W.2d 747, 750 (Tex.App.-San Antonio 1992, no writ) (letter from Secretary of State with process returned "unclaimed;" trial court erred in granting default judgment because the court had no in personam jurisdiction over nonresidents); *Boreham v. Hartsell,* 826 S.W.2d 193, 197 (Tex.App.-Dallas 1992, no writ) (plaintiff made no showing that defendant's address was "home or home office" address required by long-arm statute, and trial court never obtained personal jurisdiction over defendant). Failure to obtain proper service is "fundamental error" and *voids* the judgment

because it was rendered without proof of personal jurisdiction over the defendant. *Nueces Housing v. M & M Resources,* 806 S.W.2d 948, 950–51 (Tex.App.-Corpus Christi 1991, writ denied). Because the trial court never acquired in personam jurisdiction over Dispensa, the default judgment was void, nor merely voidable.

Dispensa waited six years before filing this suit to set aside the default judgment. In this proceeding he collaterally attacked the judgment as being void because no notice was served on him of the pending action. By the time Dispensa filed this suit, limitations had run on all direct attacks available: (1) motion for new trial (30 days), (2) writ of error (six months), and (3) bill of review (four years). Therefore, his only recourse was to collaterally attack the judgment. A collateral attack is any proceeding that does not meet all the requirements of a valid direct attack, but seeks to avoid the effect of a judgment. *Dept. of Transp. v. T. Brown Const.,* 947 S.W.2d 655, 659 (Tex.App.-Austin 1997, writ denied). There is neither a set procedure for a collateral attack nor any statute of limitations. *Id.* A party making a collateral attack does not need to meet the requirements of a bill of review to set aside a void judgment. *Id.*Collateral attacks may only be used to set aside a judgment that is void or involved fundamental error. *Id.*A judgment is void if it is shown that the court lacked jurisdiction: (1) over a *party* or the property; (2) over the subject matter; (3) to enter a particular judgment; or (4) to act as a court. *Id.*In this case, the judgment is void because appellant was never given proper notice as required by the long-arm statute, and the trial court never acquired personal jurisdiction over appellant. *Whitney,* 500 S.W.2d at 96. Therefore, the default judgment was subject to collateral attack. *Dept. of Transp. v. T. Brown Const.,* 947 S.W.2d at 659. The granting of the Bank's motion for summary judgment denying collateral relief was error. I would reverse the judgment of the trial court, vacate the default judgment, and remand this cause to the trial court for a new trial.